IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JENARA STEELE and wife** | § | |
| **SHANNON STEELE**, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:12-CV-2897-L** |
| | § | |
| **QUANTUM SERVICING** | § | |
| **CORPORATION and ARCH BAY** | § | |
| **HOLDINGS, LLC – SERIES 2010B,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiffs' Motion to Vacate (Doc. 23), filed December 21, 2012, pursuant to Federal Rule of Civil Procedure 59(e). Plaintiffs' Motion to Vacate challenges only the court's prior determination that their Real Estate Settlement Procedures Act ("RESPA") claim is barred by res judicata. After carefully reviewing the motion, response, reply, record, and applicable law, the court **grants** Plaintiffs' Motion to Vacate (Doc. 23) to the extent that it **vacates in part** the court's November 30, 2012 memorandum opinion and order. Specifically, *the court only vacates its holding that Plaintiffs' RESPA claim against Defendants, based on Plaintiffs' March 30, 2012 letter, is barred by res judicata.* For the reasons herein explained, however, the court concludes that dismissal of this claim was proper for other reasons. Accordingly, the court's granting Plaintiffs' Motion to Vacate does not affect the outcome of this case or the court's prior determination that Defendants are entitled to judgment on Plaintiffs' RESPA claim.

**Memorandum Opinion and Order – Page 1**

## I.      Standard Applicable to Rule 59(e) Motions

A motion to alter or amend the judgment under Rule 59(e) "calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (citation omitted). Such motion "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Marseilles Homeowners Condominium Ass'n Inc. v. Fidelity Nat'l Ins. Co.*, 542 F.3d 1053, 1058 (5th Cir. 2008) (citation omitted).  It may not be used to relitigate issues that were resolved to the movant's dissatisfaction. *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 289 (5th Cir. 1989).  A Rule 59(e) motion may not raise arguments or present evidence that could have been raised prior to entry of judgment. *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (citation omitted).  When considering a Rule 59(e) motion to reconsider, a court may not grant such a motion unless the movant establishes: "(1) the facts discovered are of such a nature that they would probably change the outcome; (2) the alleged facts are actually newly discovered and could not have been discovered earlier by proper diligence; and (3) the facts are not merely cumulative or impeaching." *Infusion Res., Inc. v. Minimed, Inc.*, 351 F.3d 688, 696-97 (5th Cir. 2003).  "Relief under Rule 59(e) is also appropriate when there has been an intervening change in the controlling law." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

District courts have "considerable discretion in deciding whether to grant or deny a motion to alter a judgment." *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995).  In exercising this discretion, a district court must "strike the proper balance between the need for finality and the need to render just decisions on the basis of all the facts." *Id*.  With this balance in mind, the Fifth Circuit has observed that Rule 59(e) "favor[s] the denial of motions to alter or amend a judgment." *Southern Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993). Stated another

way, "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479.

## II.   Analysis

### A.   Factual and Procedural Background Relevant to Plaintiffs' Motion to Vacate

Plaintiffs Jenara and Shannon Steele ("Plaintiffs" or "the Steeles") originally filed this action against Defendants Quantum Servicing Corporation ("Quantum") and Arch Bay Holdings, LLC Series 2010B ("Arch Bay") (collectively, "Defendants") on July 13, 2012. On November 30, 2012, the court granted Defendants' Motion to Strike, or, Alternatively Motion to Dismiss Plaintiffs' First Amended Complaint and dismissed Plaintiffs' claim under RESPA and other claims as barred by res judicata after determining that they could have and should have been asserted in the prior action that Plaintiffs brought against REO Properties Corp. ("REO") and Green Tree Servicing, LLC ("Green Tree"). Civil Action No. 3:09-CV-00603-D ("*Steele I*"). In this action and *Steele I*, Plaintiffs asserted various claims, contending that any efforts by the mortgagee and loan servicer to collect amounts owed on a residential mortgage entered by them on September 19, 1996, or to accelerate and foreclose on the property ("Property") that is the subject of the mortgage is wrongful under the terms of the original note ("Note"), deed of trust ("Deed of Trust"), and applicable law. The Note was made payable to CTX Mortgage and was executed by Plaintiffs to finance the purchase of the Property located at 933 W. Red Oak Road, Red Oak, Texas 75154. Pls.' Am. Compl. 3; Pls.' Resp. to Mot. to Dismiss 2 (Doc. 18). According to Plaintiffs' Amended Complaint ("Amended Complaint"), the live pleading in this case, their mortgage loan was subsequently

assigned to Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), which in turn assigned the mortgage

to REO with Green Tree acting as the loan servicer for REO.[1]

In October 2008, REO and Green Tree notified Plaintiffs that they were behind in their

mortgage payments.[2] Pls.' Am. Compl. ¶ 10.  Plaintiffs disputed the actual amount of arrearage and

sent two written requests to REO or Green Tree seeking a transaction history for their mortgage.[3]

*Id.*  In this case and *Steele I*, Plaintiffs alleged and contended that their requests were made pursuant

to RESPA, and that "Defendants" failed to provide a response to the requests and instead attempted

to foreclose on the Property and evict Plaintiffs.[4]  *Id.*; Pls.' Second Am. Compl. 3, ¶ 10 (*Steele I*).

---

[1] Plaintiffs' recitation of facts in this case regarding the assignment history of their mortgage varies slightly from the facts set forth in the September 7, 2010 opinion of Chief Judge Sidney A. Fitzwater in *Steele I*.  *See Steele v. Green Tree Servicing, LLC*, 3:09-CV-0603-D, 2010 WL 3565415, at *1 (N.D. Tex. Sept. 7, 2010).  In *Steele I*, based on the record before it, Judge Fitzwater concluded that the Note and Deed of Trust executed by Plaintiffs and payable to CTX was serviced by Wells Fargo, and that CTX subsequently assigned the loan and lien to GE Mortgage Services, LLC, which in turn assigned the lien to REO in 2006. Chief Judge Fitzwater further concluded that REO used Ocwen Loan Servicing, LLC ("Ocwen") to service the loan in 2006, and that REO transferred the loan servicing rights to Green Tree in April 2008. These variations, however, do not affect the court's decision as to Plaintiffs' motion to reconsider in this case.

[2] Plaintiffs actually allege that "[i]n October 2008, *Defendants* claimed that Plaintiffs were over $200,000 in arrears which Plaintiff[s] disputed."  Pls.' Am. Compl. 3, ¶ 10 (emphasis added).  Plaintiffs' pleadings in *Steele I* contained this same allegation.  Pls.' Second Am. Compl. 3, ¶ 10 (*Steele I*).  Although REO and Green Tree are not defendants in this action, it is clear from Plaintiffs' pleadings in this case and *Steele I* that they are referring to REO and Green Tree, not Arch Bay or Quantum.  *See id.*; *see also Steele*, 2010 WL 3565415, at *3 (noting that Green Tree, as the loan servicer, was the entity that notified Plaintiffs of the arrearage and resulting default: "On October 10, 2008 Green Tree sent the Steeles a 'Notice of Receipt of Partial Payment.' It stated that it had received a partial payment; that it had begun the foreclosure process; that it had previously sent a 'Notice of Default and Right to Cure Default' indicating that the Steeles owed nearly $200,000 on the note; and that its acceptance of partial payment did not waive its rights or remedies.").  Thus, it appears that Plaintiffs simply copied verbatim this allegation from their pleadings in the prior suit, even though it is somewhat misleading because the mortgage at issue was not assigned to the defendants in this case until November 2009.

[3] Plaintiffs do not state in their Amended Complaint to whom their request for a transaction history was directed, but they have acknowledged that this earlier request for account information was directed to the defendants in *Steele I*, Arch Bay's and Quantum's predecessors.

[4] Again, Plaintiffs' reference to "Defendants" refers to REO and Green Tree.  Further, although Chief Judge Fitzwater in *Steele I* disagreed with Plaintiffs' contention that these written requests to REO or Green Tree were made pursuant to RESPA and held that REO and Green Tree had no duty to respond to the requests for information by Plaintiffs, Plaintiffs' pleadings in this case contain the  same allegations that were rejected by Chief Judge Fitzwater. Plaintiffs' allegations in this regard have no relevance to their claims in this case against Arch Bay and Quantum, and

After Green Tree informed Plaintiffs in March 2009 of its intent to foreclose on the Property, Plaintiffs filed *Steele I* on April 1, 2009, which was assigned to Chief Judge Sidney A. Fitzwater.

In their Amended Complaint in this case, Plaintiffs allege that their loan was "subsequently reassigned to Quantum, the Mortgage Servicer for Arch Bay," but they do not state when the assignment occurred. Pls.' Am. Compl. 4, ¶ 12. An Assignment of Mortgage submitted by Defendants in support of their motion to dismiss indicates that REO assigned Plaintiffs' mortgage to Arch Bay on November 2, 2009, while *Steele I* was pending. Defs.' App. 69. Other documentation submitted by Defendants reflects that Quantum acted as the loan servicer for mortgage loans on behalf of REO pursuant to a June 1, 2010 Servicing Agreement.[5] *Id.* 70. After the assignment to Arch Bay, Plaintiffs sought and were granted leave in *Steele I* on December 3, 2009, to file their Second Amended Complaint. Plaintiffs' Second Amended Complaint in *Steele I*, however, contained no allegations or claims as to Arch Bay or Quantum.

On January 5, 2010, REO and Green Tree moved for summary judgment in *Steele I*. On September 7, 2010, the court granted the summary judgment and dismissed Plaintiffs' RESPA, breach of contract, Texas Debt Collection Practices Act, and unreasonable collection efforts claims, and also dismissed Plaintiffs' request for an accounting. The court also concluded that Plaintiffs were not entitled to a preliminary injunction to prevent foreclosure. On September 29, 2010, the court held that REO and Green Tree were entitled to judgment on Plaintiffs' remaining claims for anticipatory breach of contract and negligent misrepresentation.

---

Plaintiffs' use of the term "Defendants" created the misimpression and originally led the court to believe that they were referring to Arch Bay and Quantum.

[5] Plaintiffs acknowledge in their Amended Complaint that REO assigned their mortgage and that Quantum acted as the mortgage servicer for Arch Bay after the assignment but appear to have mistakenly believed that the mortgage was assigned to Quantum rather than Arch Bay. This distinction, however, does not affect the court's analysis.

On October 12, 2010, the court entered a final judgment against Plaintiffs in *Steele I* and dismissed with prejudice all of their claims. On December 30, 2010, the court denied Plaintiffs' motion for new trial. On January 27, 2010, Plaintiffs filed a notice of appeal with the Fifth Circuit. On December 12, 2011, the district court's dismissal in *Steele I* was affirmed in all respects by the Fifth Circuit. On January 25, 2011, the Fifth Circuit denied Plaintiffs' request for rehearing and issued a mandate and judgment in the case on February 2, 2012.

By letter dated March 30, 2012, which was sent by certified mail return receipt requested, Plaintiffs' counsel J.B. Peacock, Jr., requested Quantum, pursuant to RESPA, to provide certain information regarding Plaintiffs' mortgage. Pls.' Am. Compl., Ex. B. In the letter, Mr. Peacock states that his law firm represents Plaintiffs. Mr. Peacock further indicates: "We are making this request because we believe that the balance due is incorrect. We dispute the amount that was alleged to be due and owing and believe that payments may not have been properly credited to the account." *Id.* Mr. Peacock therefore requested that Quantum provide a complete transaction history for Plaintiffs' mortgage, including all payments, fees, late charges, and other information to show when payments and fees were assessed or credited and how charges were calculated. It appears from Plaintiffs' Complaint that a prior eviction notice by Quantum was the impetus for this request for information. *See* Pls.' Am. Compl. ¶ 13.

On April 26, 2012, Plaintiffs appealed the Fifth Circuit's ruling in *Steele I* by filing a petition for writ of certiorari with the United States Supreme Court. *Steele v. Green Tree Servicing, L.L.C.*, 453 F. App'x 473 (5th Cir. Dec. 12, 2011) (unpublished), *cert. denied*, 133 S.Ct. 111 (2012). On October 1, 2012, the Supreme Court entered an order denying certiorari. *Id.* According to Plaintiffs'

Amended Complaint, Quantum foreclosed on the Property and initiated eviction proceedings while their appeal in *Steele I* to the Supreme Court was pending. *Id.* ¶ 12.

As previously noted, Plaintiffs filed this action against Arch Bay and Quantum on July 13, 2012, while their appeal to the Supreme Court in *Steele I* was pending. Plaintiffs originally brought the action in the 40th Judicial District Court, Ellis County, Texas. Their decision to file the lawsuit on July 13, 2012, appears to have been driven by Defendants' attempt to evict them from the Property after the foreclosure of the Property. *See* Pls.' Am. Compl. ¶ 12.

Defendants removed the case to federal court on August 16, 2012. On August 23, 2012, Defendants filed their first motion to strike or dismiss Plaintiffs' claims. On September 13, 2012, Plaintiffs filed their Amended Complaint and a three-page response to Defendants' motion to dismiss, contending that the motion was moot in light of Plaintiffs' amended pleading.

On October 1, 2012, Defendants moved to strike or dismiss Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(c), and 12(f). On November 30, 2012, the court granted Defendants' Motion to Strike, or, Alternatively Motion to Dismiss Plaintiffs' First Amended Complaint and dismissed Plaintiffs' claims and this action with prejudice. On December 21, 2012, Plaintiffs moved to vacate the court's November 30, 2012 opinion and judgment. Plaintiffs acknowledge in their Motion to Vacate that they previously "conceded that res judicata barred some of [their] claims." Pls.' Mot. to Vacate 2. Plaintiffs contend, however, that their RESPA claim against Defendants is not barred by res judicata because it "did not arise until June 22, 2012," after *Steele I* had been dismissed and they "realized Defendants had not responded to their qualified written request." *Id.* Plaintiffs therefore contend that they could not have asserted this RESPA claim in *Steele I*. Defendants counter that the court correctly concluded that Plaintiffs'

RESPA claim is barred by res judicata.  Defendants further assert that dismissal of Plaintiffs' RESPA claim was proper because it failed as a matter of law for other reasons set forth in their motion to dismiss Plaintiffs' Amended Complaint.

In their Amended Complaint, Plaintiffs allege that they made three separate RESPA requests. Plaintiffs allege that they made the first qualified written request ("QWR") pursuant to RESPA on or about October 2008, to which "Defendants have failed to provide [a response] and instead have posted Plaintiff's Eviction notice."  Pls.' Am. Compl. 3, ¶ 10.  Plaintiffs appear to allege that they made the second RESPA request on or about March 16, 2009, "to no avail."  *Id.* ¶ 11.  As previously explained, Plaintiffs do not state in their pleadings to whom they allegedly sent the RESPA requests in 2008 and 2009, but they asserted in response to Defendants' motion to dismiss that these requests were directed at Green Tree, a defendant in *Steele I*, before their Note was transferred in November 2009.

Plaintiffs allege that they made the third RESPA request to Quantum on March 30, 2012, for an accounting on their note, and that Quantum failed to respond in the time required by section 2605(e) of RESPA.  Pls.' Am. Compl. 6, ¶ 21.  Given their contention regarding a June 22, 2012 accrual date, Plaintiffs' Motion to Vacate appears to be based on their March 30, 2012 request for mortgage account information to Quantum.  The court's conclusion in this regard is further supported by Plaintiffs' contention in response to Defendants' motion to dismiss that their "current claim relates to a March 30, 2012, qualified written request sent to Quantum," whereas their RESPA claim in *Steele I* was based on QWRs sent to Green Tree in 2008 and early 2009.  *See* Pls.' Resp. to Mot. to Dismiss 5-6.

Based on Plaintiffs' statements in their Motion to Vacate and response to Defendants' motion to dismiss, the court concludes that, even though Plaintiffs alleged facts pertaining to alleged QWRs sent in 2008 and 2009, they did not intend to assert a RESPA claim in this case based on these alleged prior violations, which the court dismissed in *Steele I*. Regardless whether Plaintiffs intended to assert a RESPA claim based on these alleged prior violations, the court determines, for the reasons explained in its November 30, 2012 opinion, that these claims are barred by res judicata, as they could have and should have been brought in *Steele I*.

As to Plaintiffs' RESPA claim based on alleged violations arising from their March 30, 2012 letter, the court, after carefully reconsidering the issue, agrees with Plaintiffs that this claim is not barred by res judicata. It nevertheless fails, as a matter of law, for other reasons. Defendants previously argued in their motion to dismiss and contend in response to Plaintiffs' Motion to Vacate that, even if Plaintiffs' RESPA claim is not barred by res judicata, it fails because "Plaintiffs do not allege how any failure on the part of Defendants to respond [to the March 30, 2012 letter] caused Plaintiffs' damage" or how the alleged violation resulted in actual damages. Defs.' Br. 19-20 (Doc. 14). According to Defendants, "Plaintiffs simply do not allege how the failure to respond to the purported qualified written request has caused them any harm." *Id*. 20. Defendants also argued in their motion to dismiss that Plaintiffs' claims were barred by collateral estoppel as a result of the court's findings in *Steele I*. Although the court did not previously address these arguments in ruling

on Defendants' motion to dismiss, it now concludes that they are dispositive of Plaintiffs' RESPA

claim based on the March 30, 2012 QWR to Quantum.[6]

### A.    RESPA

RESPA applies to loan servicing duties and requires "[e]ach servicer of any federally related

mortgage loan [to] notify the borrower in writing of any assignment, sale, or transfer of the servicing

of the loan to any other person." 12 U.S.C. § 2605(a).  RESPA requires a loan servicer to "provide

a written response acknowledging receipt of a "qualified written request" from a borrower relating

to the servicing of the borrower's loan within 20 days (excluding legal public holidays, Saturdays,

and Sundays) unless the action requested by the borrower is taken within such period. *Id*. §

2605(e)(1). "Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after

the receipt from any borrower of any qualified written request," the loan servicer must make

necessary corrections to the borrowers account, provide a written explanation as to why the loan

servicer believes that the borrower's account is correct, or explain why the information requested

is unavailable or cannot be obtained by the loan servicer.  *Id*. § 2605(e)(2).

In July of 2010, RESPA was amended by Congress to reduce the time period under section

2605(e)(1)(A) from twenty days to five days, and the time period under section 2605(e)(2) from sixty

days to thirty days.  Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-

203, § 1463(c), 124 Stat. 1376, 2183-84 (2010) ("Dodd-Frank").  The Dodd-Frank amendments,

however, are not effective until January 10, 2014.  *See Berneike v. CitiMortgage, Inc*., 708 F.3d

---

[6] Defendants also contend that Arch Bay cannot be liable for any alleged RESPA violation because it is not a loan servicer and RESPA only applies to loan servicers. Additionally, Defendants maintain that the letter sent by Plaintiffs' counsel to Quantum does not qualify as a QWR. The court need not address this issue, however, because it has determined that even taking Plaintiffs' pleadings as true, their RESPA claim, based on the March 30, 2012 letter, fails as a matter of law for other reasons herein discussed.

1141, 1145 n.3 (10th Cir. 2013).[7]   As a result, they do not apply to Plaintiffs' RESPA claim based

on their March 30, 2012 request to Quantum for information regarding their mortgage.[8]

RESPA defines "qualified written request" as "a written correspondence" that "(i) includes,

or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes

a statement of the reasons for the belief of the borrower, to the extent applicable, that the account

is in error or provides sufficient detail to the servicer regarding other information sought by the

borrower." 12 U.S.C. § 2605(e)(1)(B).   A loan servicer that fails to comply with section 2605 is

liable to an individual borrower for "any actual damages to the borrower *as a result of the failure*,"

and additional damages "in the case of a pattern or practice of noncompliance." *Id*. § 2605(f)(1)

(emphasis added). Thus, "to state a claim for a RESPA violation in connection with a [QWR], a

plaintiff must allege actual damages *resulting from a violation of § 2605*." *Enis v. Bank of Am.,

N.A.,* No. 3:12-CV-0295-D, 2013 WL 840696, at *3 (N.D. Tex. Mar. 7, 2013) (quoting *Renfrow v.

CTX Mortg. Co.*, No. 3:11-CV-3132-L, 2012 WL 3582752, at *7 (N.D. Tex. Aug. 20, 2012)

(emphasis added)); *see also Collier v. Wells Fargo Home Mortg.*, No. 7:04-CV-086-K, 2006 WL

---

[7] As explained by the Tenth Circuit in *Berneike v. CitiMortgage, Inc.*:

On July 21, 2011, the Bureau of Consumer Financial Protection (Bureau) assumed HUD's consumer-protection function under RESPA pursuant to the Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376. . . . The Dodd-Frank Act, among other changes, decreased the response time in § 2605(e) from twenty days to five and from sixty days to thirty days, but has not yet taken effect. *See* Pub. L. 111-203 §§ 1400(c), 1463, 124 Stat. 1376, 2183-84 (stating that "a section, or provision thereof, of this title shall take effect on the date on which the final regulations implementing such section, or provision, take effect" or, if no regulations have been issued, "on the date that is 18 months after the designated transfer date," July 21, 2011, which would be January 21, 2013). On January 17, 2013, the Bureau issued a final rule implementing the Dodd-Frank amendments to RESPA and amending Regulation X, with an effective date of January 10, 2014.

*Id.*

[8] Plaintiffs mistakenly believed that these amendments applied to their RESPA claim. *See* Pls.' Am. Compl. 6, ¶ 20.

1464170, at *3 (N.D. Tex. May 26, 2006) (same).  In addition to actual damages and statutory

damages in cases involving a pattern or practice of noncompliance, a borrower, if successful on his

section 2605 claim, may also recover "the costs of the action, together with any attorneys fees

incurred in connection with such action as the court may determine to be reasonable under the

circumstances."  *Id*. § 2605(f)(3).

### B.     Whether Plaintiffs have Alleged Damages Resulting from Defendants' Alleged RESPA Violations

In response to Defendants' motion to dismiss and contention that Plaintiffs have not suffered

any damages and have failed to plead that they suffered actual damages as a result of the alleged

RESPA violation, Plaintiffs contend:

> Defendants['] failure to respond to Plaintiffs' qualified written request prevented
> Plaintiffs [from] getting an accurate picture of their account, making it impossible to
> correct any default.  Because of this, Plaintiffs['] account went further into default,
> forcing Plaintiffs into foreclosure.  Thus, Plaintiffs['] damages include the loss of
> their home and Property.  (AC ¶ 24).  Additionally, Plaintiffs incurred attorneys' fees,
> which are recoverable under RESPA.

Pls.' Resp. to Mot. to Dismiss 8 (Doc. 18).  The Amended Complaint does not contain any

allegations to support their contention that Defendants' alleged failure to respond to their March 30,

2012 request for information prevented them or made it impossible for them to cure or "correct any

default."  Instead, Plaintiffs allege with regard to their RESPA claim that "[a]s a result of"

Defendants' alleged RESPA violation in failing to respond to Plaintiffs' March 30, 2012 QWR,

"Defendants had no right to foreclose." Pls.' Am. Compl. 7, ¶ 24.  Plaintiff further allege that they

incurred damages, including loss of title to the Property, mental anguish, and attorney's fees.  In the

section of their Amended Complaint dedicated to "Damages," Plaintiffs generally allege that the

following damages proximately resulted from Defendants' conduct without specifying which

damages resulted from the various violations and wrongs allegedly committed by Defendants: (1) attorney's fees; (2) "loss of creditworthiness and the stigma of foreclosure"; (3) "Mental anguish and acute psychic trauma"; (4) "loss of title to their home"; and (5) the "value of lost time incurred by Plaintiffs attempting to correct the errors of Defendants." *Id.* 10-11, ¶ 37.  In their reply brief in support of their Motion to Vacate, Plaintiffs also contend for the *first time* that they incurred actual damages in the form of "the cost of postage and the cost of photocopying all documents used in preparation of drafting the QWR" and time spent "corresponding with their attorneys in preparing the correspondence to the mortgage servicer." Pls.' Reply 3-4 (Doc. 29).

Assuming without deciding that the letter from Plaintiffs' counsel, dated March 30, 2012, to Quantum qualifies as a QWR for purposes of RESPA, the court concludes that Plaintiffs failed to state a RESPA claim against Defendants upon which relief could be granted because their alleged damages could not have resulted from any alleged failure by Defendants under RESPA to acknowledge and respond to their March 30, 2012 letter.

### 1.    Attorney's Fees

Plaintiffs contend that the attorney's fees they incurred constitute damages under RESPA. The court disagrees. As noted above, RESPA permits a successful plaintiff to recover costs and attorney's fees *in addition to* actual damages.  Moreover, the court is not aware of any authority, and Plaintiffs cite none, to support their contention that attorney's fees qualify as actual damages under RESPA.  The court therefore concludes that any attorney's fees incurred by Plaintiffs are insufficient to meet the requirement that they suffered actual damages as a result of Defendants's alleged RESPA violations.

**Memorandum Opinion and Order – Page 13**

### 2.    Mental Anguish

Plaintiffs do not argue or cite any authority to show that mental anguish damages are recoverable under RESPA, and, as noted above, it is not even clear from Plaintiffs' pleadings whether they contend that they suffered mental anguish damages as a result of Defendants' alleged RESPA violations. Courts are split on whether RESPA allows for the recovery of mental anguish or emotional distress damages. *Compare Rawlings v. Dovenmuehle Mortg., Inc.*, 64 F. Supp. 2d 1156, 1166-67 (M.D. Ala. 1999) (citing cases that have held that nonpecuniary damages for emotional distress are available under RESPA), with *Katz v. Dime Sav. Bank, FSB*, 992 F. Supp. 250, 255-56 (W.D.N.Y. 1997) (concluding that nonpecuniary damages are not available under RESPA). Based on RESPA's statutory language and legislative history, the court in *Katz* reasoned that damages under RESPA are limited to pecuniary damages:

> On its face, section 2605 is designed to streamline the servicing of mortgage loans and to clarify the disclosures that loan servicers are required to make to the borrower. The damage provisions recognize that if the loan servicer fails to follow the required procedures, the borrower may suffer pecuniary harm, such as the subsequent denial of credit due to accounting errors. If Congress had intended for this statute to have a broader remedial purpose, then it would have explained such an intention either in the language of the statute or the accompanying legislative history. It is for Congress to proscribe appropriate penalties, not the courts.

*Id.* at 256.  At least one federal district court in Texas has similarly concluded that nonpecuniary damages in the form of mental anguish are not recoverable under RESPA.  *Trahan v. GMAC Mortg. Corp.*, No. EP-05-CA-0017-FM, 2006 WL 5249733, at *8 (W.D. Tex. July 21, 2006) ("The statute does not permit mental anguish damages and this court is not at liberty to award damages which are not provided for in the statute.").

The court believes that the approach in *Katz* and *Trahan* is the better one in light of RESPA's language and purpose. The court therefore determines that mental anguish damages are not recoverable under RESPA and do not satisfy the requirement that Plaintiffs must have suffered actual damages. Even if recoverable, the court concludes that Plaintiffs have not alleged, apart from the threadbare, conclusory recital "[m]ental anguish and acute psychic trauma," that they suffered damages actionable under RESPA or that their alleged damages are causally related to a RESPA violation. Moreover, for the reasons herein discussed, it is implausible that Plaintiffs' alleged damages in this regard occurred as a result of Quantum not acknowledging or responding to their March 30, 2012 letter rather than the foreclosure of the Property that occurred before the RESPA deadline to acknowledge or respond to the letter. Accordingly, the alleged damages, even taken as true, simply do not rise to the level of being actionable under RESPA.

### 3.     Costs Incurred in Preparing QWR and Time Lost in Correcting Alleged Errors

Plaintiffs contend that "the cost of postage and the cost of photocopying all documents used in preparation of drafting the QWR" and the time spent "corresponding with their attorneys in preparing the correspondence to the mortgage servicer" satisfy RESPA's requirement that they suffered harm in the form of actual damages. Pls.' Reply 3-4 (Doc. 29). For support, Plaintiffs cite *Johnstone v. Bank of America, N.A.*, 173 F. Supp. 2d 809 (N.D. Ill. 2001), and *Cortez v. Keystone Bank, Incorporated*, No. 98-2457, 2000 WL 536666 (E.D. Pa. May 2, 2000). Both of these cases rely on *Rawlings*, 64 F. Supp.2d at 1164.

The cases cited by Plaintiffs are not binding on the court, and the court finds them unpersuasive because RESPA limits the recovery of actual damages to those that result from a failure

to comply with the statute and the costs allegedly incurred by Plaintiffs could not have resulted from any alleged statutory violation by Defendants.  Specifically, the costs allegedly incurred by Plaintiffs in preparing and sending the March 30, 2012 letter to Quantum are not actionable under RESPA because any such costs would have necessarily been incurred *before* the alleged RESPA violation, that is, before Defendants were allegedly required to acknowledge or respond to the March 30, 2012 letter.  Accordingly, these costs could not have resulted from Defendants' alleged failure to comply with RESPA.  Moreover, Plaintiffs would have incurred the costs regardless of whether Defendants acknowledged and responded to the March 30, 2012 letter.  Thus, Plaintiffs' claim based on these costs are not actionable under RESPA.

### 4.    Foreclosure, Loss of Title and Creditworthiness

In support of their motion to dismiss Plaintiffs' Amended Complaint, Defendants submitted a copy of the certified mail receipt, which shows that Quantum received the letter dated March 30, 2012, on April 5, 2012.  Plaintiffs acknowledge this fact.  Pls.' Am. Compl. 6, ¶ 21.  The RESPA 20-day deadline to acknowledge receipt of the letter was therefore May 3, 2012, and the 60-day deadline for responding or taking action in response to the letter was June 29, 2012.[9]  According to a publicly available record maintained by the Ellis County Appraisal District for the Property, the foreclosure or sale of the Property occurred on May 1, 2012, *before* the RESPA deadlines to acknowledge and respond to Plaintiffs' March 30, 2012 letter request.[10]  Thus, the foreclosure of the

---

[9] These deadlines were calculated using April 5, 2012, the date Quantum received Plaintiffs' March 30, 2012 letter, as a starting point, and, pursuant to RESPA, the calculation does not include weekends or legal public holidays.

[10] A copy of the record referenced was attached to Defendants' Notice of Removal and is also publicly available on the internet.  In deciding a Rule 12(b)(6) motion, a district court may take judicial notice of matters of public record without transforming a motion to dismiss into a summary judgment motion.  *Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. 2011); *Joseph v. Bach & Wasserman, L.L.C.*, No. 12-30206, 2012 WL 3655358, at *4 n.2 (5th Cir. Aug. 27,

Property and Plaintiffs' loss of title to the Property, which occurred before the deadlines to acknowledge and respond to their March 30, 2012 letter, could not have resulted from Defendants' alleged violation of RESPA.[11]

Moreover, given that the foreclosure and sale of the Property occurred before the deadline under RESPA to respond to Plaintiffs' March 30, 2012 letter, the court questions whether Defendants had any obligation under RESPA to respond to Plaintiffs' additional last-minute requests for information and contentions regarding inaccuracies in their account. As discussed in more detail in the next section, the court in *Steele I* previously addressed and rejected these same contentions by Plaintiffs regarding alleged inaccuracies in their account based on a failure to credit past payments.

Plaintiffs' contention that they experienced "loss of creditworthiness and the stigma of foreclosure" is likewise unavailing, as it is predicated on the foreclosure. Furthermore, contrary to Plaintiffs' assertion, their March 30, 2012 request for information and Defendants' alleged failure to acknowledge or respond to the request did not affect Defendants' authority to foreclose on the Property because the statute provides damages as a remedy and nothing more. Accordingly, Plaintiffs' contention in this regard is without merit.

### 5.    Alleged Inability to Cure Default to Prevent Foreclosure

Plaintiffs' contention that Defendants' failure to respond to the March 30, 2012 letter caused them to go "further into default, forcing [them] into foreclosure" by "making it impossible [for them]

---

2012). Accordingly, the court's judicial notice and consideration of the foreclosure or sale date of the Property included in the public record maintained by the Ellis County Appraisal District does not transform Defendants' motion to dismiss into a motion for summary judgment.

[11] When Plaintiffs filed the instant action against Defendants on July 13, 2012, the 60-day deadline had not yet expired. Accordingly, Plaintiffs' RESPA claim based on Defendants' failure to respond to their March 30, 2012 letter had not accrued.

to correct any default" also fails.  Pls.' Resp. to Mot. to Dismiss 8 (Doc. 18).  As previously noted, this specific argument was raised for the first time by Plaintiffs in their response to the motion to dismiss, and Plaintiffs' Amended Complaint contains no allegations in this regard.  Accordingly, it cannot form the basis for their RESPA claim against Arch Bay and Quantum or their Motion to Vacate.[12]

Even if it had been pleaded, Plaintiffs' contention in this regard fails because it is based on arguments previously raised by Plaintiffs and rejected by the court in *Steele I*.  Specifically, Plaintiffs contended in this case, their March 30, 2012 letter to Quantum, and *Steele I* that the amount represented to be owed under the Note was incorrect because payments had not been credited to their account and that such inaccuracies and misrepresentations by the defendants regarding the amount owed prevented them from correcting or curing their default.  Pls.' Am. Compl. 4, ¶ 14; Ex. B to Pls.' Am. Compl. (Doc. 10-2); Pls.' Second Am. Compl. 4, ¶ 11 (*Steele I*).  According to Plaintiffs, these errors and omissions resulted in the attempted foreclosures of their Property in April and May 2009, and the ultimate foreclosure of the Property and their eviction from the Property in 2012 in violation of RESPA, the Note, and Deed of Trust.

Chief Judge Fitzwater in *Steele I*, however, determined that Plaintiffs' contentions regarding alleged inaccuracies in or misrepresentations by Green Tree regarding the total amount owed under the Note as of October 2008 and January 2009, based on Wells Fargo's failure to credit their account

---

[12] *See Marseilles Homeowners Condo. Ass'n v. Fidelity Nat'l Ins. Co.*, 542 F.3d 1053, 1058 (5th Cir. 2008) (concluding that the "district court did not abuse its considerable discretion in denying Marseilles the opportunity to raise the claim after judgment" that could and should have been made before judgment was entered); *Ervin v. Sprint Commc'n Co. LP*, 364 F. App'x 114, 118 n.4 (5th Cir. 2010) (unpublished) (concluding similarly that Rule 59(e) "'cannot be used to raise arguments which could, and should, have been made before the judgment issued.' A legal argument not raised in opposition to summary judgment but improperly raised for the first time in a Rule 59(e) motion is still waived because such an argument was never properly before the district court.") (citing and quoting *Simon*, 891 F.2d at 1159).

for payments made in 2002 and 2006, were without merit. Specifically, he determined that the March 2007 forbearance executed by Plaintiffs constituted a modification of the Note and established the total amount owed under the Note at that time, as well as the increased amount Plaintiffs were required to pay monthly under the forbearance agreement. Because Plaintiffs had agreed to a modification of their Note in 2007 and the forbearance agreement established the amount owed and the amount of Plaintiffs' monthly payments as of March 2007, the court concluded that any prior alleged failure to credit amounts paid in 2002 and 2006 was irrelevant.

Chief Judge Fitzwater also rejected Plaintiffs' argument that Green Tree failed to record a November 5, 2008 payment of $1,820.43 after the parties entered into the forbearance agreement. Based on account logs submitted by both parties, which contained essentially the same information, he concluded:

> A reasonable trier of fact could not find that the Steeles's evidence shows that Green Tree failed to properly account for the 2008 payment. The Steeles have pointed to no evidence that would permit a reasonable trier of fact to find that Green Tree's statement of their account balance was incorrect.

*Steele*, 2010 WL 3565415, at *6. The court therefore concluded that "Defendants did not seek sums not owed to them." In addition, the court rejected Plaintiffs' contention that they were prevented or excused from making their monthly payments under the 2007 forbearance agreement as a result of Green Tree providing them with a notice in 2008 and 2009 of the total amount owed on the Note. Chief Judge Fitzwater further concluded that Plaintiffs were not entitled to a requested accounting because REO and Green Tree provided evidence in support of their January 5, 2010 summary judgment motion that Plaintiffs had received a copy of their account history during the discovery process. Thus, Plaintiffs had already obtained a copy of their account history before they requested

Quantum to provide them account information on March 30, 2012. Because these issues were resolved by Chief Judge Fitzwater in *Steele I*, were essential to the judgment entered in that case against Plaintiffs, and involved parties in privity with Defendants, the court will not permit Plaintiffs to relitigate these matters.[13]

Although Arch Bay and Quantum were not defendants in *Steele I*, Plaintiffs' allegations in this case regarding alleged misstatements and inaccuracies as to amounts owed or not credited under the Note relate to the same events that were addressed and resolved by Chief Judge Fitzwater in *Steele I*.   Moreover, these alleged misstatements and inaccuracies occurred *before* the assignment of Plaintiffs' mortgage on November 2, 2009, to Arch Bay. While Plaintiffs' counsel states in his March 30, 2012 letter to Quantum, "[W]e believe that the balance due is incorrect. We dispute the amount that was alleged to be due and owing and believe payments may not have been properly credited to the account," Plaintiffs allege no new or additional facts in their Amended Complaint other than those pertaining to matters that were decided in *Steele I*.   Other than Plaintiffs' contention that Defendants failed to respond to their March 30, 2012 letter, the only allegations in this case by Plaintiffs that pertain specifically to Arch Bay and Quantum deal with the 2012 foreclosure and eviction.   Again, however, no new or additional facts are alleged with regard to these events. Accordingly, based on the aforementioned findings by Chief Judge Fitzwater's in *Steele I* and Plaintiffs' failure to allege any new facts in this case, the court cannot reasonably infer that

---

[13] The doctrine of "collateral estoppel or issue preclusion[] recognizes that suits addressed to particular claims may present issues relevant to suits on other claims. In order to effectuate the public policy in favor of minimizing redundant litigation, issue preclusion bars the relitigation of issues actually adjudicated, and essential to the judgment, in a prior litigation between the same parties." *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 536 (5th Cir. 1978) (internal quotation marks and footnotes omitted).  Unlike claim preclusion, the doctrine of collateral estoppel or issue preclusion does not necessarily require that the parties in both lawsuits be identical.  *Next Level Commc'ns LP v. DSC Commc'ns Corp.*, 179 F.3d 244, 250 (5th Cir. 1999) (citation omitted).

Defendants' alleged failure to acknowledge or respond to the March 30, 2012 request for information about their account forced them into default and foreclosure or made it impossible for them to cure the default.

The court can only conclude that Plaintiffs were in default long before they disputed in 2012 the balance owed on their Note and requested information from Quantum about their mortgage to confirm, among others things, whether certain payments had been credited to their account. Moreover, Plaintiffs obtained information regarding their account in *Steele I*, and the court rejected their arguments regarding failure to credit.  Plaintiffs nevertheless continued to use this as a basis to further delay impending foreclosure and eviction proceedings.  Plaintiffs' March 30, 2012 letter was essentially the legal equivalent of a "Hail Mary pass" or a last-minute desperate attempt to avoid foreclosure and eviction after years of being in default.  After averting foreclosure and eviction for more than a decade, "the jig is up," and Plaintiffs would do well to heed the words of Willie Nelson's classic Country Western song: "Turn Out the Lights, the Party's Over."

Accordingly, for all of the reasons explained, the court concludes that Plaintiffs' Motion to Vacate with regard to their RESPA claim, based on the March 30, 2012 letter, should be granted. Dismissal, however, of Plaintiffs' RESPA claim is appropriate because the court cannot reasonably infer from their allegations in this case, particularly in light of Chief Judge Fitzwater's findings in *Steele I*, that their alleged damages resulted from any failure by Defendants to acknowledge or respond to their March 30, 2012 letter.  Plaintiffs have therefore failed to state a RESPA claim upon which relief can be granted.

`

**Memorandum Opinion and Order – Page 21**

### III.    Plaintiffs' Request to Amend Their Pleadings

In their Motion to Vacate, Plaintiffs again seek leave to amend their pleadings.  Plaintiffs assert that "[b]y this amendment, [they] intend to remove those causes of action that they have conceded." Pls.' Mot. to Vacate 3.  Plaintiffs maintain that when they amended their pleadings the first time, the Supreme Court had not yet denied their petition for writ of certiorari. According to Plaintiffs, if the Supreme Court had set aside the final judgment in *Steele I*, they "could have asked the District Court [in *Steele I*] for leave to amend to include the instant Defendants and the claims against them." *Id.*

Plaintiffs' appeal in *Steele I* is irrelevant to the issue of whether they can state a RESPA claim, based on the March 30, 2012 letter to Quantum, against Defendants.  Moreover, as was the case when they previously sought leave to amend their pleadings, Plaintiffs fail again to explain how they intend to cure the deficiencies noted in Defendants' motion to dismiss.  As noted in the court's prior opinion, Plaintiffs amended their pleadings after Defendants filed their first motion to dismiss, which the court considered in ruling on the motion to dismiss and the Motion to Vacate.  Plaintiffs contended that their amended pleadings mooted Defendants' motion to dismiss.  Plaintiffs' amended pleadings, however, did not cure the deficiencies noted in Defendants' first motion to dismiss. Consequently, the court believes that Plaintiffs have stated their "best case" and that they cannot improve upon or supplement the allegations as pleaded.  Plaintiffs have had a fair opportunity to make their case. *See Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).  The court therefore concludes that Plaintiffs cannot set forth any allegations sufficient to state a claim upon which relief can be granted, and that further attempts to amend would be futile and

unnecessarily delay the resolution of this action.  Accordingly, the court will not allow Plaintiffs an opportunity to further amend their pleadings.

## IV.     Conclusion

For the reasons herein stated, the court **grants** Plaintiffs' Motion to Vacate (Doc. 23) to the extent that it **vacates in part** the court's November 30, 2012 memorandum opinion and order for other reasons.  Specifically, *the court only vacates its holding that Plaintiffs' RESPA claim against Defendants, based on Plaintiffs' March 30, 2012 letter to Quantum, is barred by res judicata.*  For the reasons herein explained, however, the court concludes that dismissal of this claim was proper. Accordingly, the court's granting Plaintiffs' Motion to Vacate, as herein discussed, does not affect the outcome of this case or the court's prior determination that Defendants are entitled to judgment on Plaintiffs' RESPA claim.  Because this opinion does not alter or change the outcome of this action, as previously determined by the court, an amended judgment will not be issued.

**It is so ordered** this 25th day of June, 2013.

Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order – Page 23**